IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**MARY W. COLON, Trustee,**

        **Plaintiff,**

**vs.**                                                          **Case No. 4:12cv101-MCR/CAS**

**DARRYL STRAWBERRY, et al.,**

        **Defendants.**

_____/


## ORDER and REPORT AND RECOMMENDATION

        Pending in this case is a motion to intervene, doc. 83, filed by Lisa Strawberry.

Responses to the motion to intervene have been filed by Sterling Mets, L.P., a/k/a The

New York Mets Baseball Club [hereinafter "the Mets"], doc. 91, Mary W. Colon as

Trustee [Trustee], doc. 92, and the Internal Revenue Service of the United States of

America [IRS], doc. 93.  Lisa Strawberry filed a "notice of intent to file a reply."  Doc. 95.

An Order was entered advising that the Rules of this Court provide that reply

memoranda shall not be "filed absent a showing of good cause and upon leave of

court."  N.D. Fla. Loc. R. 7.1(C)(2) (quoted in doc. 97).  Nonetheless, Lisa Strawberry

was permitted to file a motion requesting leave to file a reply, demonstrating good cause

to do so, on or before February 12, 2015.  Doc. 97.  A day after that deadline, Lisa

Strawberry filed a motion requesting leave to file a reply on the basis that the IRS, the

Trustee, and the Mets "raised several new issues in their Opposition Memorandum to which Intervenor deserves an opportunity to respond."  Doc. 98.

**Motion to Intervene, Doc. 83**

Lisa Strawberry requests leave to intervene as a right under Rule 24(a) or, in the alternative, she seeks permissive intervention under Rule 24(b).  Doc. 83.  The motion was filed on January 20, 2015,[1] nearly three years after this case was withdrawn from the Bankruptcy Court.  Lisa Strawberry asserts "a substantial legal interest in the subject matter of [this] action because it involves an asset that is community property and subject of a dissolution of marriage judgment, dated October 15, 1993[,] between [Lisa Strawberry] and Defendant Darryl Strawberry."  *Id.* at 2.  Lisa Strawberry claims that she "owns half" of Darryl Strawberry's Deferred Retirement Annuity and was unaware of this action until publicity of the scheduled sale of the Annuity.[2]  *Id.* at 3.  She further claims she "has a[n] unsatisfied judgment for Child Support and Spousal Support that predates all the claims that have been made in this action including that of the Defendant IRS."  *Id.*  Lisa Strawberry asserts that the motion to intervene is timely, that she has a "direct, substantial and legally protectable" interest, that her claim has priority, and her interest will be impaired absent intervention.  *Id.* at 5-11.

Attached to the motion is Lisa Strawberry's complaint in intervention, Ex. A (doc. 83-1), which alleges that she obtained a final judgment of dissolution of marriage to Defendant Darryl Strawberry on October 15, 1993.  Doc. 83-1.  Pursuant to that

_____

[1] The motion to intervene was filed on the date of the scheduled sale of the asset at issue.  The emergency motion to restrain the sale, doc. 84, was denied.  Doc. 86.

[2] Lisa Strawberry indicates she "became aware" of the scheduled sale on January 12, 2015, "by reading a news article on the internet."  Doc. 83-1 at 7.

judgment, Lisa Strawberry acquired "half interest in the Deferred Compensation of Defendant Darryl Strawberry" and he was "ordered to pay child support of $15,000.00 per child for a total of $30,000.00 per month and $50,000.00 per month of spousal supporting commencing May 1, 1993." *Id.* at 6.  In 1995 and in 1996, adjustments were made to the monthly child and spousal support award.[3]  *Id.*  Lisa Strawberry further advises that Darryl Strawberry is in arrears and as of January 16, 2015, has an outstanding balance of over $300,000.00.  *Id.*

**The Responses**

Responses to the motion to intervene have been filed by the Mets, doc. 91, Mary W. Colon as Trustee, doc. 92, and the IRS, doc. 93.  Each response has been considered.

The Mets filed a limited response to the motion stating that when the Mets filed their interpleader action, they joined all known persons who could assert a claim against Darryl Strawberry's rights to receive payment under the Deferred Compensation plan. Doc. 91.  Lisa Strawberry was not joined because she entered into a settlement in 2003 with the Mets as part of her own bankruptcy case.  *Id.* at 1-2 (citing to Doc. 85, Ex. 1). Thus, it is contended that Lisa Strawberry's motion to intervene "disregards the 2003 Bankruptcy Settlement . . . ." *Id.* at 2.  The Mets state that they take "no position" on whether Lisa Strawberry's motion to intervene should be granted, asserting only that

---

[3] The motion indicates that copies of the relevant orders were attached to the motion as Exhibit B, doc. 83-1 at 6, but the orders were not attached to the motion to intervene.  Only Exhibit A was attached which contained portions of the dissolution judgment.  Docs. 83-2 at 1-14, doc. 83-3 at 1-10.  However, review of the emergency motion for a temporary restraining order, doc. 84, reveals the orders were submitted as exhibits to that motion.  *See* doc. 84.

any relief provided to her should be rendered after satisfaction of the tax liens and payment of attorneys fees and costs to the Mets.  *Id.* at 2-3.

Trustee Mary Colon points out that pursuant to Lisa and Darryl Strawberry's Marital Settlement Agreement, which was approved by the court, she was to receive $800,000.00 from Darryl Strawberry's Deferred Compensation Plan, which was administered through the Mets.  Doc. 92 at 2.  When Lisa Strawberry filed for bankruptcy under Chapter 7 in November 1999, her interest in the Deferred Compensation Plan was deemed to be an asset that could be administered by her Trustee.  *Id.* at 4.  Her Trustee entered into an agreement with the Mets to settle all claims Lisa Strawberry had in Darryl Strawberry's Deferred Compensation Plan.  *Id.* Accordingly, Trustee Mary Colon asserts that "Lisa Strawberry no longer has any claim to the funds of the Strawberry Deferred Compensation Account."  *Id.*  Put another way, the Trustee states that Lisa Strawberry's claim to Strawberry's Deferred Compensation Plan "was extinguished" pursuant to the settlement agreement between her own Trustee and the Mets, which was approved by the bankruptcy court.  *Id.*

The IRS also points out that Lisa Strawberry's motion to intervene "accurately recites that she was awarded a half-interest in the deferred compensation as part of her divorce decree."  Doc. 93 at 3.  "[H]owever, she fails to mention that her half-interest was extinguished by a bankruptcy court order."  *Id.*  Furthermore, to the degree Lisa Strawberry presents an alternative ground for intervention on the basis that she holds a judgment against Darryl Strawberry, the IRS notes that "she does not allege any judgment lien or execution lien against the deferred compensation, and because she

does not make an *in rem* claim in this *in rem* proceeding, her motion to intervene should be denied." *Id.*; *see also* at 5.

**The Bankruptcy Court Order**

Partial copies of the relevant bankruptcy order were filed in this case.  Doc. 85-1, Doc. 92, Ex. A.  For clarity, an Order was entered requiring a complete copy of that order be filed.  Doc. 101.  The IRS filed the complete order on March 9, 2015.  Doc. 102.  That order, doc. 102-1, granted the Trustee's motion for an order approving a compromise of controversies and approving a settlement agreement and mutual general release between the Trustee and numerous parties, including the Mets.  Doc. 102-1 at 1-4, 6.  The order was signed by United States Bankruptcy Judge Ellen Carroll on July 29, 2003, without objection and without a request for a hearing.  *Id.* at 4.

The facts upon which the Agreement was based, and which were adopted by Judge Carroll, were that the Mets were "contractually obligated to pay" to Darryl Strawberry, and following his divorce to his first wife, Lisa Strawberry, "certain sums of money in equal monthly installments over a period of thirty (30) years."  Doc. 102-1 at 21.  The payments would commence on January 1st of the calendar year immediately following Darryl Strawberry's retirement from professional baseball.  *Id.* at 21-22.  At the time of the Agreement, no payments had yet been made under the plan because Darryl Strawberry had not yet retired.  *Id.* at 22.  Pursuant to the Agreement, the payments due to Lisa Strawberry would, because of her bankruptcy Petition, be made to the Trustee. *Id.* at 21.  Lisa Strawberry's only asset[4] in her bankruptcy asset was "a fifty (50%)

---

[4] The Bankruptcy Court specifically held that the Deferred Compensation Plan was "not exempt but [was] an asset" of Lisa Strawberry's "bankruptcy estate that the Trustee may administer."  Doc. 102-1 at 7.

percent interest in" Darryl Strawberry's Deferred Compensation Plan, "valued, with payments over time," at one million six hundred thousand dollars.  Doc. 102-1 at 5 (*see also* doc. 102-1 at 21).  As required by the Agreement, the Mets agreed to pay the Trustee "the sum of $814,014.50, less any applicable federal taxes which will be withheld and paid by the Mets . . . ."  Doc. 102-1 at 8.  From that sum, sixty-six percent was paid to Cabot, and the Trustee retained thirty-four percent of funds which was "preserved for the benefit of the estate . . . ."  Doc. 102-1 at 9-11.  Thus, Lisa Strawberry received the money to which she was entitled from the Mets, and that money was used to pay her outstanding debts.  The Agreement provided that "[i]n lieu of any and all payments due by the Mets to the Debtor, the Trustee, the Estate or the Cabot Parties under the Plan, the Mets shall pay the Estate the aggregate sum of $814,014.50 less any applicable federal taxes . . . ."  *Id.* at 24.

The Agreement made clear it concerned "any and all claims of the Debtor, the Trustee, the Estate or the Cabot Parties against the Mets," and it provided that it was "the intention of the Settling Parties to compromise and settle any and all claims that may exist among and between them and to release any and all claims among and between them as set forth" in the Agreement.  Doc. 102-1 at 22-23.  Accordingly, the Trustee, on behalf of herself, the Estate, and its representatives "hereby withdraw, release, remise, acquit and forever discharge the Mets . . . from any and all suits, claims, demands, actions, causes of action, debts, liabilities, rights damages, costs, attorney's fees, expenses or losses of every kind or nature whatsoever related to the Plan or any obligations due under the Plan and by whomsoever asserted . . . ."  *Id.* at 25.  That release paragraph (¶ 6) makes abundantly clear that the release was for <u>all</u>

claims "from the beginning of the world to the present, including any and all claims, demands or rights to payment from the Mets, known or unknown, prior or subsequent to the Petition Date, secured, unsecured, priority or otherwise."  Doc. 102-1 at 25.  The release could not be more clear.

**The Reply**

As noted above, a day after the deadline provided for Lisa Strawberry to file a motion requesting leave to file a reply, *see* doc. 97, the motion was filed.  Doc. 98. Although she did not request that the motion be deemed timely filed, it has been so construed.  Lisa Strawberry contends that leave to file a reply should be provided because the three responding parties "raised several new issues" in their opposition. Doc. 98.  She asserts "it would be helpful to this Court to address the circumstances that involve Intervenor dealings with Defendant IRS as it relates to Defendant Darryl Strawberry's income tax liability."  *Id.* at 1-2.  While good cause to file a reply is questionable in this circumstance, Lisa Strawberry is given the benefit of the doubt and leave to file the reply, doc. 98, is **GRANTED**.

Lisa Strawberry argues in reply that the IRS does not have authority to force the sale of the Deferred Compensation Plan and "take their claimed first lien right and push Intervenor's lien rights to a lower priority."  Doc. 98 at 5-8.  She further contends that she has a judgment for spousal support and child support which predate the IRS liens. *Id.* at 9.  She claims the "levies in the instant matter were wrongful because the relevant funds are necessary to satisfy outstanding child support and spousal payments."  *Id.* at 10.  She asserts that the levy was wrong because "it was placed on property in which Intervenor had an interest .. . ."  *Id.*  All

**Intervention as of Right**

Rule 24(a) provides that on a "timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a).  The property which is the subject of this action is Darryl Strawberry's Deferred Compensation Plan, administered by the Mets. Lisa Strawberry no longer has a property interest in that Plan because she already received her half of the Plan during her bankruptcy proceeding.  Consequently, those funds were used to pay her debts.  Thus, Lisa Strawberry received the benefit of her bargain as shown in the stipulated judgment entered on her dissolution of marriage in October 1993.  She received an early disbursement of money due to her from the Deferred Compensation Plan and no longer has a legally protected interest in Darryl Strawberry's Deferred Compensation Plan.

Lisa Strawberry argues before this Court that the Deferred Compensation Plan was exempt from the bankruptcy estate.  Doc. 98 at 11.  She also claims that she was denied due process in the bankruptcy proceeding because until now, she was unaware of the extinguishment of her claims.  *Id.* at 12.  She states that her attorney "withdrew prior to the hearing" in which the Court determined that the Deferred Compensation Plan was not exempt and was an asset of the bankruptcy estate."  *Id.*  Thereafter, Lisa Strawberry states that notices were "sent to an incorrect address and returned as

undeliverable." It is suggested that Lisa Strawberry was unaware that her half of the Plan was used to settle her bankruptcy debts. *Id.*

To the degree Lisa Strawberry contends the Deferred Compensation Plan should have been excluded, that argument should be rejected.[5] The Bankruptcy Court explicitly held that the Plan was the only asset of her estate and concluded it was not exempt. This Court does not have jurisdiction to review or overturn the decision of a bankruptcy court in California. Lisa Strawberry is bound by the order entered nearly twelve years ago by the United States Bankruptcy Court for the Central District of California. The motion to intervene based on Rule 24(a) should be denied because Lisa Strawberry does not have "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." FED. R. CIV. P. 24(a)(2).

**Permissive Intervention**

To the degree Lisa Strawberry argues she has a right to receive additional funds from the sale of that Plan because Darryl Strawberry is in arrears concerning his child and spousal support payments, such a motion is based upon Rule 24(b)'s permissive intervention. That rule provides that on timely motion, the court may permit intervention when the moving party "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). It is within the Court's discretion to allow permissive intervention under Rule 24(b). Worlds v. Dep't. of Health

---

[5] Indeed, Lisa Strawberry cannot have it both ways. She cannot argue that the Plan should have been excluded from her bankruptcy proceeding, but not excluded from Charisse Strawberry's bankruptcy case which gave rise to this proceeding.

& Rehab. Servs., 929 F.2d 591, 595 (11th Cir. 1991).  Specific consideration must be given to the question of "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b)(3).  Notwithstanding that the IRS does not challenge the timeliness of the motion, *see* doc. 93 at 5-6, it does not appear that the motion was timely filed.

The IRS moved on March 2, 2012, to "withdraw the reference of this adversary proceeding" and to allow the IRS "to file a counterclaim (over which the bankruptcy court would not have jurisdiction) so as to resolve this litigation efficiently."  Doc. 2.  The basis for that motion was that Darryl Strawberry and Lisa Strawberry divorced on October 15, 1993, and she obtained the half interest in his Deferred Compensation Plan.  *Id.* at 3.  Subsequent to their divorce, "federal tax liens attached to all property and right to property belonging to Darryl Strawberry."  *Id.* at 3-4.  In the interim, Darryl Strawberry married Charisse Ann Strawberry, the debtor in the underlying bankruptcy proceeding, and in March 2006, they entered into a property settlement agreement which was incorporated into their divorce decree.  *Id.* at 5.  That agreement purported to grant a portion of Darryl Strawberry's interest in his Deferred Compensation Plan to Charisse Strawberry, but the federal tax liens were already attached to his interest in the Plan.  *Id.*

Thus, after Charisse Strawberry filed her bankruptcy petition, the Trustee filed an amended complaint against Darryl Strawberry, Charisse Strawberry, the Mets, and the IRS asserting a claim to the Plan based on the divorce settlement.[6]  *Id.* at 5-6.  Because

---

[6] The Trustee claimed Charisse Strawberry was "entitled to $800,000 from the" Deferred Compensation Plan based on the Qualified Domestic Relations Order.  Doc. 7 at 3.

the Mets were faced with competing claims to the Plan, the Mets filed a crossclaim for interpleader pursuant to Rule 22 seeking clarity on the prior of the various claims and to ensure proper distribution of funds in the Plan.  Doc. 7 at 3.  Noting that the IRS had indicated it would file a counterclaim to foreclose on the Deferred Compensation account at issue, the Bankruptcy Court entered an Order on April 19, 2012, recommending that the IRS's motion to withdraw the reference of the bankruptcy proceed be granted because that Court did "not have jurisdiction over the IRS' foreclosure of its tax lien."  *Id.* at 4.  Such issues may impact the bankruptcy estate, but "all the issues are non-bankruptcy related and are between parties that are neither debtors nor creditors of the estate."  *Id.*  The case was withdrawn on May 18, 2002. Doc. 8.

The Clerk entered a default as to both Charisse Strawberry, doc. 23, and Darryl Strawberry, doc. 24 in August 2012.  In November 2013, default judgment was entered against Darryl Strawberry and Charisse Strawberry, and the "federal tax liens for Darryl Strawberry's 1989, 1990, 2003, and 2004 federal income tax liabilities [were] foreclosed against Strawberry's interest in the deferred compensation agreement between Strawberry" and the Mets.  Doc. 46.  That Order directed that all payments under the Plan be made to the United States and extinguished Darryl Strawberry's rights "in the event those rights are sold in a foreclosure sale."  *Id.* at 2; *see also* doc. 53.

Thereafter, the IRS moved for a foreclosure sale of Darryl Strawberry's Deferred Compensation Plan, doc. 68, which was granted.  Doc. 77.  The morning of that sale, Lisa Strawberry moved to intervene, doc. 83, and an "emergency motion for a temporary restraining order," doc. 84.  There, Lisa Strawberry asserting that in 1997, an

order was entered on arrearage "showing combined Child and Spousal Support of approximately $150,000.00." Doc. 84 at 4. Lisa Strawberry claimed that on "September 25, 2007, a hearing was held regarding the Child Support Services Department's Motion to enter" a Qualified Domestic Relations Order. *Id.* Notably, Lisa Strawberry does not contend that a judgment was entered following that hearing, nor has she presented this Court with such a judgment. However, attached to her motion for a temporary restraining order is a document which indicates that at some unspecified time after September 25, 2007, a Qualified Domestic Relations Order for Support was entered. Doc. 84-3 at 5.

Accordingly, at the time Lisa Strawberry's motions were filed in this proceeding, all that remained was a determination of the appropriate distribution of proceeds from the sale. The sale proceeds  are estimated as sufficient to pay all of Darryl Strawberry's tax liens, his estimate current taxes, the attorney fees sought by the Mets, and the amount sought by the Trustee. *See* doc. 99 at 1-2. The parties have been in settlement negotiations concerning the distribution and it has been suggested that "there will be no dispute regarding distribution." *Id.* at 2. It is too late in the day to permit intervention which will unduly delay resolution of this case. Payment from the sale is due by March 21, 2015, and distribution should occur soon thereafter. Doc. 99. The addition of Lisa Strawberry as intervenor would delay that process as this Court would be required to determine the amount Darryl Strawberry is in arrears and, if so, whether judgment has been entered concerning that amount.[7] Moreover, if judgment

---

[7] Lisa Strawberry submitted copies of letters which she sent over the years to the Mets attempting to collect from the Plan. Doc. 98 at 20-23. She states only that she has a "court order for child support and spousal support" and asserts that she has "been

has not yet been entered, such a delay would have been unnecessary and unduly delay this case.  This last hour assertion of a right to join in the distribution of proceeds of the sale of Darryl Strawberry's Deferred Compensation Plan should not be permitted.

Moreover, it is not clear based on this record that Lisa Strawberry has a legal right to seek additional funds from the Plan.  She states in her emergency motion for a temporary restraining order that if she were a "judgment lien creditor" and acquired that status "prior to October 2000 . . . when the government recorded its federal tax liens, Lisa Strawberry would be entitled to priority over the government."   Doc. 84 at 9. According to her motion, a "judgment lien creditor" is one "who has obtained a valid judgment . . . for the recovery or . . . a certain sum or money . . . . [and as] a person who has *perfected a lien under the judgment on the property involved*."  *Id.* at 10 (emphasis added).  Lisa Strawberry has not demonstrated that she has a valid judgment or that she perfected a lien on that judgment concerning the property involved.  The only judgments entered for Lisa Strawberry on the property involved were (1) judgment in her dissolution of marriage which gave her half interest in the property and (2) judgment in the bankruptcy proceeding in which her interest in the property was extinguished. Doc. 84-1 at 2 through doc. 84-2 at 10; doc. 102-1.  Thus, she does not have status as a judgment creditor.

Furthermore, it does not appear that she would have priority either.  According to the documents submitted by Lisa Strawberry, her Qualified Domestic Relations Order

---

trying to collect on past due support for several years."  Doc. 98 at 20.  In 2008, she said she had been "trying to lien Darryl Strawberry's portion of the Deferred Compensation Acct. for past due child support and spousal support."  *Id.* at 21, 22. That being so, she does not demonstrate that she has a obtained a judgment or lien.

was entered in 2007, *after* the federal tax liens were entered in 2000.  Thus, any interest

she has in property owned by Darryl Strawberry would not, apparently, have priority.  To

the degree she now desires to argue either (1) that Darryl Strawberry still owns property

from which she is entitled to levy to recover support amounts in arrears, or that (3) she

has a priority interest in his Deferred Compensation Account, re-litigation of the issue of

priority[8] would cause prejudice to the existing parties and further delay this case.  *See*

F.T.C. v. American Legal Distrib., Inc., 890 F.2d 363, 365 (11th Cir. 1989) (affirming

denial of motion to intervene which was filed after matters at issue were already

resolved).[9]

"When considering the timeliness of a permissive motion to intervene, which

would affect the rights of the existing parties in the existing litigation, the Eleventh

Circuit considers '(1) the length of time during which the proposed intervenor knew or

reasonably should have known of the interest in the case before moving to intervene;

(2) the extent of prejudice to the existing parties as a result of the proposed intervenor's

failure to move for intervention as soon as it knew or reasonably should have known of

its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied;

and (4) the existence of unusual circumstances militating either for or against a

determination that their motion was timely.' "  Georgia v. U.S. Army Corps of Eng'rs, 302

F.3d 1242, 1259 (11th Cir. 2002) (quoted in Boca Raton Cmty. Hosp., Inc. v. Tenet

---

[8] That issue was decided sixteen months ago in November 2013.  Docs. 45, 47.

[9] The court determined that intervention could be permitted for matters not yet resolved, i.e., the distribution of assets.  890 F.2d at 365-66.  The difference between that case and this case is that the motion to intervene presented a final judgment which gave the intervenors "a protectable interest."

Healthcare Corp., 271 F.R.D. 530, 534 (S.D. Fla. 2010)).  Prejudice to the existing parties would be significant if the motion to intervene were granted, but prejudice to Lisa Strawberry would be minimal considering she has not shown that she has a court judgment against Darryl Strawberry or valid lien concerning the property at issue here, the Deferred Compensation Plan.  There are no unusual circumstances which mitigate in favor of permitting intervention.  Lisa Strawberry has had many years to seek judicial relief pertaining to the amount in arrears which is owed to her by Darryl Strawberry. The parties to this litigation who sit on the verge of ending this case within a few days[10] should not be prejudiced by granting the motion to intervene.

In the truest sense, Lisa Strawberry does not have a viable "claim . . . that shares with the main action a common question of law or fact" as required by Rule 24(b).  This action is, in essence, "an action to enforce federal tax liens" against Darryl Strawberry. Lisa Strawberry has no interest in the tax liens.  Her only interest is in recovering money which was due to her as child support and spousal support pursuant to her divorce from Darryl Strawberry from any available source of his income.[11]  She does not, however, have a protected legal interest in the property at issue here (the Deferred Compensation

---

[10] Full payment from the purchase of Darryl Strawberry's Deferred Compensation Plan is due on March 21, 2015.  Doc. 99.

[11] To the degree Lisa Strawberry seeks an order from this Court which imposes an obligation against Darryl Strawberry to pay the amount of support in arrears, she must seek relief from state court.  Federal courts abstain from deciding issues such as alimony, child custody, child support, and enforcement of divorce decrees pursuant to the "domestic relations" exception.  See Ingram v. Hayes, 866 F.2d 368, 369 (11th Cir. 1988) (quoted in Moussignac v. Georgia Dep't of Human Res., 139 F. App'x 161, 161-62 (11th Cir. 2005).

Plan) which will provide payment of his federal tax liens.  Thus, the motion for

permissive intervention under Rule 24(b) should be denied.

**ORDER**

Accordingly, it is **ORDERED** that Lisa Strawberry's motion for leave to file a reply,

doc. 98, is **GRANTED**.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to

intervene, doc. 83, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on March 17, 2015.


 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**